## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL COMPLAINT** |
| | : | |
| v. | : | The Honorable Michael A. Hammer |
| | : | |
| BIENVENIDO PEREZ LAZALA | : | Mag. No. 18-4009 |
| a/k/a "MAURY" | : | |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

SEE ATTACHMENT A

I further state that I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations, and that this Criminal Complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached page and made a part hereof.

Special Agent Eric Gallagher
Homeland Security Investigations
Department of Homeland Security

Sworn to before me and subscribed in my presence,
February 6, 2018 at Newark, New Jersey

THE HONORABLE MICHAEL A. HAMMER
UNITED STATES MAGISTRATE JUDGE

Signature of Judicial Officer

## **ATTACHMENT A**

From on or about January 31, 2018 through on or about February 5, 2018, in the District of New Jersey, in New York, and elsewhere, defendant

BIENVENIDO PEREZ LAZALA a/k/a "MAURY"

did knowingly and intentionally conspire and agree with others to distribute and possess with intent to distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

In violation of Title 21, United States Code, Section 846.

**ATTACHMENT B**

I, Eric Gallagher, am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI").  I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and items of evidence.  Where statements of others are related herein, they are related in substance and part.  Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation.  Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

**BACKGROUND**

1.      In October 2017, FNU LNU a/k/a "Porfirio," ("Porfirio") a broker and supplier of narcotics in Mexico, told a confidential informant (the "CI") in a series of messages in New Jersey and New York over Facebook that Porfirio was, in sum and substance, "looking for a person to receive shipments of drugs to distribute in New Jersey."

2.      On or about January 2, 2018, at approximately 1:09 P.M., Porfirio contacted the CI who was in New Jersey over Facebook Messenger regarding a possible shipment of fentanyl.  At approximately 1:30 P.M., Porfirio told the CI that 10 kilograms of narcotics had gone to California and that 3 kilograms would be flown to the New York area on Sunday January 7, 2018.

3.      On or about January 8, 2018, Porfirio told the CI that weather and flight cancellations had delayed the courier.

4.      On or about January 15, 2018, at approximately 7:15 P.M., Porfirio provided the CI with two United States telephone numbers that the CI could use to coordinate the fentanyl transaction.  One of the two numbers was for FNU LNU-1.

5.      On or about January 15, 2018, at approximately 7:30 P.M., in a recorded telephone call, the CI in New Jersey communicated with FNU LNU-1, who agreed to send a courier with the fentanyl to the CI in New Jersey on January 16, 2018.

6.      On or about January 16, 2018, at approximately 6:00 P.M., FNU LNU-1 told the CI that FNU LNU-1's relative was going to retrieve the fentanyl and would meet with the CI at an IHOP restaurant located in Elizabeth, New Jersey (the "Elizabeth IHOP").

7.      On or about January 17, 2018, at approximately 1:55 P.M., the CI arrived at the Elizabeth IHOP, parked near the front entrance, and contacted

FNU LNU-1, who told the CI that the courier would be in a silver car ("Courier Vehicle1").

8.      While at the Elizabeth IHOP, an individual ("Individual 1") exited Courier Vehicle 1 and entered the CI's vehicle.  During a consensually recorded conversation inside the CI's vehicle, Individual 1 asked the CI, in sum and substance, whether the CI had the money to pay for the narcotics.  After the CI confirmed that the CI had the money, Individual 1 left the CI's vehicle, walked in the direction of Courier Vehicle 1, looked toward a nearby taxi cab, and spoke to a passenger in the taxi ("Individual 2").  Individual 2 then retrieved a plastic bag from the taxi and brought it to the CI's vehicle.  Individual 2 returned to the taxi empty handed.  Law enforcement then stopped Courier Vehicle 1 and the taxi, and arrested Individual 1, Individual 2, and the driver of Courier Vehicle 1 ("Individual 3").  Law enforcement recovered a bag filled with a blue colored substance, suspected to be fentanyl; however, subsequent lab tests did not confirm the presence of fentanyl.

9.      Individual 2 waived *Miranda* and stated that Individual 2 believed that the plastic bag contained a controlled substance and that Individual 2 picked up the plastic bag in Brooklyn and transported the bag to New Jersey for the purpose of selling it to the CI in New Jersey.

10.     On or about January 25, 2018, at approximately 4:14 P.M., over Facebook Messenger, Porfirio contacted the CI and provided the CI with the contact information for another source of narcotics supply whom the CI could contact for purposes of establishing narcotics sales in New Jersey for Porfirio.  Subsequently, the CI spoke with the contact, an individual known as "Maury," later identified as Bienvenido Perez Lazala ("LAZALA").

11.     On or about January 31, 2018, in a consensually recorded call between the CI and LAZALA, the CI asked, "You told me that it's good, Right? One hundred percent?"  LAZALA replied, "Yes, not because it's not mine, the car, but it's a great opportunity.  It was for someone that we brought it in for. But that person got dumb, that's why we have it here.  It's here for a great opportunity.  We can give it for a good price.  I know with that car there's money.  Where I am there's no way to sell it.  Those kinds of cars don't sell.  No one is looking for those kinds of cars here."  LAZALA then described the "car" as "white and shiny," "pure shiny," and "good to move that because it's a great opportunity."  The CI then stated, "We can keep working together," and LAZALA replied, "That's what I'm saying.  I don't want to sell just one car.  I need to keep on selling them.  I need someone responsible that I can keep throwing them too [sic]."  Based on my knowledge of the investigation, the reference to "cars" in this conversation was a reference to narcotics.  The CI and LAZALA agreed that a narcotics transaction would take place on or about February 5, 2018.

12.     On or about February 5, 2018, at approximately 12:58 P.M., in a consensually recorded call, the CI called LAZALA from Montvale, New Jersey, and stated, in sum and substance, that the CI was on his way to New York.

13.     On or about February 5, 2018, at approximately 2:20 P.M., in a consensually recorded call, the CI spoke with LAZALA about meeting at a Stop and Shop in Haverstraw, New York (the "Haverstraw Stop and Shop").  LAZALA agreed to meet the CI at the Haverstraw Stop and Shop.

14.     At approximately 2:28 P.M., the CI arrived at the Haverstraw Stop and Shop and met with LAZALA who arrived as a passenger in a white Infiniti, being driven by another individual ("Individual 4").  LAZALA got out of the white Infiniti and got into the CI's vehicle.  The CI and LAZALA agreed to drive to a nearby residence in Haverstraw, New York.  LAZALA went into the residence and brought out a green case.  LAZALA showed the CI the contents of the case in the CI's vehicle, but stated, in sum and substance, that he did not want to finalize the transaction or count money at that location because it was in the territory of another narcotics dealer.  LAZALA and the CI traveled back to the Haverstraw Stop and Shop, where law enforcement arrested LAZALA and seized the green case, which contained approximately 1135 grams, including the plastic evidence bags, of a substance that field-tested positive for heroin.